UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| PAUL A. LEE, | ) | CASE NO. 4:08 CV 2808 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| J.T. SHARTLE, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

On December 1, 2008, pro se petitioner Paul A. Lee filed the above-captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Mr. Lee, who is incarcerated at the Federal Correctional Institution in Elkton, Ohio ("F.C.I. Elkton"), brings this action against Warden J.T. Shartle at F.C.I. Elkton. He challenges the Bureau of Prisons' ("BOP") rule "on the Second Chance Act and 18 U.S.C. § 3624(c)."

*Background*

Petitioner was indicted in 1994 and charged with, inter alia, conspiring to possess with intent to distribute crack cocaine in the United States District Court for the Northern District

of West Virginia.  See United States v. Lee, No. 94cr50096 (N.D. WV 1994).  The court sentenced him on January 30, 1995 to 214 months in prison, followed by 8 years of supervised release.

While serving his sentence at the Federal Medical Center in Lexington, Kentucky, petitioner learned that his pre-release preparation date was scheduled for October 18, 2009.  His projected release date was set as April 18, 2010.  Petitioner objected to these dates.  His pre-release date reflected 10 percent of the time he had left to serve and he felt he was entitled to be released sooner.

In June 2007, petitioner began the process of exhausting his administrative remedies. Harrell Watts, National Inmate Appeals Administrator, issued a final decision on March 7, 2008, denying Mr. Lee's request for earlier release to home confinement. Mr. Watts explained that the issue of home confinement falls within the authority of the BOP's Community Corrections Manager ("CCM"), as set forth in P.S. 7320.01.  The relevant program statement provides that a BOP staff member must refer an inmate to a CCM.  The CCM then chooses the most appropriate program for the prisoner (i.e., C.C.C., Comprehensive Sanctions Center, home confinement, or other community program).  In closing, Mr. Watts advised Mr. Lee that "[o]nly the CCM may approve Home Confinement."  Letter from Watts to Lee of March 7, 2008.

Shortly after receiving Mr. Watts's denial, the Second Chance Act of 2007 was signed into law on April 9, 2008.  The Act, which changed the BOP's statutory authority to make pre-release residential re-entry center ("RRC") placement decisions, provided that inmates who had not yet been transferred to an RRC would be reconsidered under the new standards if they had previously been reviewed under the old standards.

On November 6, 2008, Mr. Lee attended his six month unit team meeting at FCI Elkton, to where he had been transferred earlier. The purpose of the meeting was to determine how much time his unit team would recommend for his placement in a half-way house. The staff member conducting the hearing, Mr. Sweeney, recommended 180 days, or six months placement. Mr. Sweeney explained to petitioner that even after considering the provisions of the Second Chance Act, he was constrained by the fact that half-way house facilities were only allowing inmates to stay 90 days. Furthermore, Mr. Sweeney did not believe petitioner needed more time to transition.

*Analysis*

Mr. Lee argues that he "meet [sic] the criteria of 18 U.S.C. § 3621, which include [sic] resources of the facility, the nature and circumstances of the offense, and the history and characteristics of the inmate." Petition at 3. He does not believe Mr. Sweeney took any of these facts into consideration when he limited his placement in a half-way house to six months. Moreover, he feels that the reasoning provided by the BOP, limited availability based on the restrictions of the half way house, should not effect the amount of time for which he is eligible. He adds that "because petitioner['s] institution [sic] record the Bureau of Prison, is not restricted by § 3624(c) to place [an] inmate in a CCC for more than Six (6) months, if appropriate, in petitioner['s] case spending 14 years, or maybe 15 years, one would think petitioner'[s] unit team would recommend more than 180 days." Petition at 4.

Petitioner believes the BOP is punishing him for being a Career Offender. As such, he maintains respondent is making him serve 15 years of his 17 years, 10 months sentence. He argues that this court cannot allow the BOP to "dictate" who is entitled to receive more than six

3

months release to a half way house. He asks the court to consider the fact that he knows "an inmate who [is] serving 34 months [and] is getting 4 months hallfway [sic] house, here petitioner did four times his sentenced [sic] and getting two months more that [sic] inmate." Petition at 4. He requests an order directing the BOP to provide him an additional six months placement in a half-way house, "according to old policy or the Second Chance Act of 2007." Id.

Petitioner acknowledges that he exhausted his administrative remedies based on a request for home confinement, rather than the request for extended placement in a half way house that is now before this court. He believes, however, that he is entitled to have the exhaustion requirement waived because "he would suffer irreparable harm" if the court required him to exhaust based on the issues before it. Mr. Lee believes that the complete process would take so long that it would overlap the date by which he is requesting release. He also claims he could not begin the administrative exhaustion process until unit team met in November 2008.

*Standard of Review*

Whether a writ of habeas should be granted is dictated by 28 U.S.C. § 2243. The statute provides, in relevant part:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, *unless it appears from the application that the applicant or person detained is not entitled thereto.* (Emphasis added.)

Based on the facts alleged in the petition before this court, Mr. Lee is not entitled to habeas relief.

4

*Second Chance Act*

Mr. Lee's contention that "he [is] eligible for any extra time allowed by the old rule" is rendered moot by the passage of the Second Chance Act, Pub.L. No. 110-199, 122 Stat. 657 (Apr. 9, 2008). As recently explained by the District Court of Eastern Michigan:

> Relevant to the issues presented here, the Act amended 18 U.S.C. § 3624(c). Amended section 3624(c)(1) authorizes the BOP to consider placing an inmate in an RRC for up to the final 12 months of his or her sentence, rather than the final six months that were available pre-amendment. Amended section 3624(c)(4) also states that nothing in section 3624 'shall be construed to limit or restrict the authority of the Director or of the Bureau of Prisons under [18 U.S.C. § 3621, the statute empowering the BOP to take a convict into custody and designate a place of imprisonment.]' The Act requires the BOP to issue new RRC regulations within 90 days. 18 U.S.C. § 3624(c)(6) (amended).
>
> In accordance with the Second Chance Act, on April 14, 2008, the BOP issued an interim policy memorandum on RRC placement considerations. The memorandum states that the 'categorical timeframe limitations on prerelease community confinement' found in 28 C.F.R. §§ 570.20 and 570.21 (i.e., the ten percent limit that Petitioner challenges in this petition) '*are no longer applicable and must no longer be followed.*' The memorandum further requires that RRC placement decisions be made on an individual basis with reference to the five-factor criteria set out in section 3621(b). Inmates previously denied RRC placement, such as Petitioner, were to be reconsidered under the standards set out in the memorandum.

Ashburn v. Eichenlaub, No. 07-13040, slip op. 2008 WL 5244413, at *2 (E.D. Mich Dec. 16, 2008) (quoting Montes v. Sanders, No. CV 07-7284, 2008 WL 2844494, at *1 (C.D. Cal. July 22, 2008)). Thus the 'old rules' of the BOP no longer apply. With the passage of the Second Chance Act, Mr.

5

Lee's request for relief under former BOP pre-release placement is rendered **moot**.

*Exhaustion*

Mr. Lee's remaining request for "extra time" under the Second Chance Act is premature. Ordinarily, prisoners seeking relief under 28 U.S.C. § 2241 are required to exhaust administrative remedies before filing a habeas action in district court. <u>Little v. Hopkins</u>, 638 F.2d 953, 953-954 (6th Cir. 1981) (per curiam); <u>United States v. Cobleigh</u>, 75 F.3d 242, 251 (6th Cir. 1996)). Whether or not exhaustion is required in a § 2241 habeas proceeding is not a matter within the scope of the Antiterrorism and Effective Death Penalty Act ("AEDPA") or the Prisoner Litigation Reform Act ("PLRA"). Rather, exhaustion is a judicially created requirement for § 2241 petitions, and one the court may waive if it finds that exhaustion is futile. <u>See</u> <u>Davis v. Keohane</u>, 835 F.2d 1147 (6th Cir. 1987); <u>Manakee Professional Medical Transfer Service, Inc. v. Shalala</u>, 71 F.3d 574 (6th Cir. 1995). It is only futile to resort to administrative remedies if there has been "a prior indication from the agency that it does not have jurisdiction over the matter or it has evidenced a strong position on the issue together with an unwillingness to reconsider." <u>James v. United States Dept. of Health and Human Services</u>, 824 F.2d 1132, 1139 (D.C.Cir. 1987).

The administrative remedies for federal prisoners bringing a 28 U.S.C. § 2241 petition are set forth in 28 C.F.R. §§ 542.10-16. Section 542.13(a) demands that an inmate first informally present his complaint to the staff (BP-8 form) before filing a formal request for an administrative remedy. If the inmate cannot informally resolve his complaint with staff, then he may submit the formal written complaint (BP-9) to the warden. An inmate who is not satisfied with the warden's response may submit an appeal (BP-10) to the appropriate regional director within 20 calendar days of the date the warden signed the response; and finally, if dissatisfied with the

6

response of the regional director, then he may submit an appeal (BP-11) to the office of the BOP's General Counsel.

The BOP's response times are established in 28 C.F.R. § 542.18, which provides that once the inmate has filed the proper form, "response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days." Id.

Here, Mr. Lee seeks to by-pass the BOP exhaustion process, alleging that he should receive "emergency relief" because he would otherwise suffer irreparable harm. Because he only learned in November 2008 (five months ago) that he was going to be placed in a half way house for six months and seeks an additional six months placement, his requested eligibility date for release would have been April 10, 2009. Given the that the three-step BOP administrative remedy process takes approximately 90 days from beginning to end, a remedy would have been very close to the deadline.

Even if the court were inclined to grant expedited review, his claim that he will suffer irreparable injury unless his petition is immediately reviewed lacks merit. The court construes this as a request for injunctive relief and finds that such relief is not warranted.

*Injunctive Relief*
*Unwarranted*

The four factors to be considered before granting a preliminary injunction are: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. Golden v. Kelsey-Hayes Co., 73 F.3d 648, 653 (6th Cir. 1996) (citing Performance Unlimited, Inc. v. Questar Publishers, Inc., 52

F.3d 1373, 1381 (6th Cir. 1995)).

Mr. Lee's likelihood of success on the merits is unlikely at this stage for three reasons. First, the record is incomplete without an evaluation of the CCC placement issue by the Warden, the BOP Mid-Atlantic Office and the BOP Central Office.

Second, it is the BOP which is vested "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner," 18 U.S.C. § 3621; Moody v. Daggett, 429 U.S. 78, 88 (1976); Beard v. Livesay, 798 F.2d 874 (6th Cir. 1986). More importantly, there is no constitutional or inherent right of a convicted person to be released before the expiration of a valid sentence. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979).

The Due Process Clause of the United States Constitution does not entitle an inmate to any particular custody or security classification. Moody, 429 U.S. at 88; Montanye v. Haymes, 427 U.S. 236, 242 (1976). Inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . and is not otherwise violative of the Constitution." Hewitt v. Helms, 459 U.S. 460, 468 (1983). From this, the Supreme Court has held that prisoners have no inherent constitutional right to placement in any particular prison (such as a half-way house), security classification, or housing assignment. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 225 (1976). Therefore, Mr. Lee has no due process right to be placed in a half-way house earlier than the date on which the BOP assigns him.

Third, the location where a federal inmate is imprisoned is governed by 18 U.S.C. § 3621(b). The statute sets forth the criteria which the BOP must consider in making a determination

as to where an inmate will serve his federal sentence. It provides, in relevant part:

> (b) Place of imprisonment. - The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
> > (1) the resources of the facility contemplated;
> > (2) the nature and circumstances of the offense;
> > (3) the history and characteristics of the prisoner;
> > (4) any statement by the court that imposed the sentence -
> > > (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> > > (B) recommending a type of penal or correctional facility as appropriate; and
> > (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

As noted earlier, Mr. Lee has not submitted the issue pertaining to earlier CCC placement through the administrative exhaustion process. While he does allege that the unit team explained that half-way houses are limiting the length of time prisoners can remain, there is no indication Warden Shartle has had an opportunity to consider the pre-release factors set forth in § 3624(c). For that reason, the court can only address the fact that the BOP was acting within its authority when "the resources of the facility contemplated," were clearly a part of its decision to limit the length of petitioner's stay in a half-way house. Contrary to Mr. Lee's assertions, this is not an illegitimate reason to limit his tenure to 180 days in a half-way house. While he counters that his status as a

career offender was not considered by the unit team, there is no per se rule that career offenders are entitled to more than six months in a half-way house.

Mr. Lee maintains that he meets the criteria and is thus entitled to earlier pre-release custody under 18 U.S.C. § 3624(c), which provides as follows:

> (c) Prerelease custody. -
> (1) In general. - The Director of the Bureau of Prisons shall, *to the extent practicable*, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

This statute only obligates the BOP to facilitate an inmate's transition from the prison system. Under the authority of § 3621(b), the BOP may place a prisoner in a half-way house for six months, or more. Section 3624(c) dictates that the BOP must formulate a plan of pre-release conditions. This plan may include CCC placement, home confinement, drug or alcohol treatment, or any other plan that meets the obligation of a plan that addresses the prisoner's re-entry into the community. Again, the obligation is qualified by the phrase "to the extent practicable." Security concerns or space limitations in a half-way house near the prisoner's home are among the factors that may make it impractical to transfer a prisoner to a CCC for all or even part of the transition period.

Other than the fact that he would not be released earlier than six months before his scheduled date, Mr. Lee has not alleged any other irreparable injury. The fact remains that petitioner was sentenced to serve a 214-month term of imprisonment. Because he has no constitutional right to serve his sentence in a facility more to his choosing for any certain amount of time he has no claim before this court. See Ogunyale v. Phillips, No. 1:07CV165, 2008 WL

1820652, at *5 (N.D. W.Va. Apr. 22, 2008) (prisoner is not entitled to a specific amount of time in a halfway house; rather, a prisoner is entitled only to have the BOP consider his application for CCC placement in accordance with the five factors set forth in § 3621(b)).

Finally, Mr. Lee alleges, without support, that he is being punished for being a career offender. There is simply nothing to suggest why or upon what basis he believes that fact restricted him from earlier release.

Denying petitioner emergency relief will not result in irreparable injury, which is the legal standard for granting injunctive relief. Courts are cautioned to stay out of the business of micro-managing prisons. See Bell v. Wolfish, 441 U.S. 520 (1979); Turner v. Safley, 482 U.S. 78 (1987); Turney v. Scroggy, 831 F.2d 135 (6th Cir. 1987). The public interest would not be served by interfering with the BOP's discretion in selecting where Mr. Lee will spend the rest of his federal sentence and for how long he will be at any location.

*Conclusion*

Accordingly, the request to proceed in forma pauperis (Doc. 3) is denied[1] and this action will be dismissed pursuant to 28 U.S.C. § 2243. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.


Dated: April 17, 2009         /s/ John R. Adams
                              JOHN R. ADAMS
                              UNITED STATES DISTRICT JUDGE

---

[1] The filing fee of $5 has been paid. See Receipt No. 44660001317.